IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


RAYMOND L. P.,[1]                                      Case No. 3:17-cv-01587-JR

       Plaintiff,

       v.                                              OPINION & ORDER

NANCY A. BERRYHILL,
Deputy Commissioner of Social
Security Administration,

       Defendant.
_____

RUSSO, Magistrate Judge:

       Plaintiff Raymond L. P. brings this action for judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying his application for Disability

Insurance Benefits under the Social Security Act. For the reasons set forth below, the

Commissioner's decision is reversed and this case is remanded for further proceedings.

_____

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the non-governmental party or parties in this case. Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

## PROCEDURAL BACKGROUND

On April 15, 2014, plaintiff applied for Title II Disability Insurance Benefits, alleging disability beginning on February 1, 2014. Tr. 20, 245.[2] His application was denied initially and upon reconsideration. Tr. 20, 156, 169. On June 9, 2016, a hearing was held before an administrative law judge ("ALJ"). Tr. 20, 46. Plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 20, 46–87. On September 23, 2016, the ALJ issued a decision finding plaintiff not disabled. Tr. 17–45. On August 15, 2017, the Appeals Council denied plaintiff's request for review. Tr. 1–5. On October 6, 2017, plaintiff filed a complaint in this Court.

## FACTUAL BACKGROUND

Plaintiff was born on January 6, 1970. Tr. 245. He was 44 years old on the alleged date of disability and 46 years old at the time of the ALJ's decision. Id. He left school in the ninth grade and never obtained a high school diploma or equivalent degree. Tr. 54, 267. He worked as a forklift driver and "lead man" from 1997-2012. Tr. 55–56, 267–68. Plaintiff alleges disability due to sleep apnea, chronic depression and anxiety, carpal tunnel syndrome, diabetes, and chronic pain. Tr. 266, 272.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The

---

[2] Plaintiff previously applied for benefits and was denied following an ALJ hearing on November 8, 2013. Tr. 88–155.

court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986) (citations omitted). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon plaintiff to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can work, he is not disabled; if he cannot

perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish the claimant can perform other work existing in significant numbers in the national or local economy. Yuckert, 482 U.S. at 141–42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S FINDINGS

At step one of the sequential evaluation process outlined above, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 23. At step two, the ALJ determined plaintiff had the following severe impairments: abdominal disorder, bilateral carpal tunnel syndrome, obstructive sleep apnea, spine disorder, obesity, affective disorder, and anxiety disorder. Id. At step three, the ALJ determined plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 24.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined by 20 C.F.R. § 404.1567(a) except he was limited to:

> [f]requent climbing of ramps and stairs, kneeling and crouching; occasional climbing of ladders, ropes and scaffolds, stooping and crawling; frequent handling bilaterally; less than occasional exposure to fumes, odors, dust, gases, poor ventilation, and pulmonary irritants, and also to hazards, such as moving mechanical parts and unprotected heights; limited to performing simple and routine tasks; limited to simple, work-related decisions; limited to occasional interaction with supervisors, co-workers and the public.

Tr. 27.

At step four, the ALJ determined plaintiff was not capable of performing any past relevant work. Tr. 38. At step five, the ALJ concluded, based on the VE's testimony, that there were a

significant number of jobs in the national and local economy plaintiff could perform despite his impairments. Tr. 39–41. Accordingly, the ALJ concluded plaintiff was not disabled from February 1, 2014, through the date of the decision, September 23, 2016. Tr. 41.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) rejecting his subjective symptom testimony; (2) giving great weight to Michele Scott, a treating mental health counselor; (3) failing to provide legally sufficient reasons to discount the opinion of Ben Kessler, M.D.; and (4) failing to properly credit lay witness testimony. Pl.'s Opening Br. 4 (doc. 16).

## I.     Plaintiff's Testimony

Plaintiff contends the ALJ neglected to provide legally sufficient reasons, supported by the record, to reject his subjective symptom testimony. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Charter, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective

symptom statements are consistent with the record as a whole. SSR 16-3p, available at 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the June 2016 hearing, plaintiff testified he was unable to work due to chronic pain, carpal tunnel, sleep apnea, falling asleep on the job, and mental instability. Tr. 57–58. Plaintiff stated that he hurts "every day . . . everywhere." Id. He stated, "right now I don't like to do anything" and that he does not interact with people often. Tr. 68, 70. Plaintiff also testified that he was concerned about falling asleep on the job again, and hurting himself or coworkers. Tr. 58. Despite his physical impairments, plaintiff testified that he walks two of his dogs 3-5 times a day for approximately 2-3 miles total. Tr. 67, 71, 500, 588. Finally, plaintiff testified that he uses nonprescription Vicodin "almost every day" and smokes marijuana "everyday [sic]." Tr. 59, 61.

The ALJ determined "[plaintiff's] medially determinable impairments could reasonably be expected to cause the alleged symptoms; however, [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 29. Specifically, the ALJ determined that "there is no direct interference [from plaintiff's spine disorder] with his activities of daily living." Tr. 31. In regards to plaintiff's depression and anxiety, the ALJ found that his alleged symptoms were inconsistent with the record, which shows improvement with treatment. Tr. 34. In regards to plaintiff's obstructive sleep apnea, the ALJ noted the medical record also indicates improvement. Tr. 29. The ALJ considered plaintiff's carpal tunnel syndrome and related wrist, hand, and elbow pain, and found that these conditions improved with treatment. Tr. 30. When considering plaintiff's

abdominal disorder, the ALJ determined the medical record indicated intermittent complaints of pain, but not intensity and severity equal to what plaintiff alleged to be experiencing. Tr. 32.

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014). Here, regarding plaintiff's back, neck, and arm pain, the ALJ noted the record indicates no functional limitations. Tr. 31. In fact, plaintiff's treating physician recommended ice and heat four times a day to manage pain as opposed to medication. Tr. 364. Furthermore, plaintiff's range of motion of his cervical spine was normal and there was little change in his lumbar spine since 2010. Tr. 447, 869. After epidural steroid injections in 2015, plaintiff reported a 50% relief from neck pain. Tr. 851. Examination findings in 2016 were essentially normal. Tr. 868–69, 874–75. Indeed, plaintiff testified to driving as needed, walking his dogs, and occasionally shopping. Tr. 29. In addition, the record shows that since the alleged onset date, plaintiff has regularly ridden his motorcycle; played video games; moved boxes; gone camping, fishing, and hunting; taken his grandson to the park and a trip to the ocean with his wife. Tr. 22, 70, 105, 477, 479, 489, 493, 499, 500, 520, 660, 663, 670, 688, 752, 754, 792, 840.

An ALJ is entitled to consider whether improvements in medical conditions contradict a claimant's subjective symptom testimony. See Pruitt v. Comm'r of Soc. Sec., 612 Fed. App'x 891, 893 (9th Cir. 2015) (treatment notes indicating claimant's mental health improved with treatment supported ALJ's decision that claimant was not disabled); Salchenberg v. Colvin, 534 Fed. App'x 586, 587–88 (9th Cir. 2013) (affirming ALJ's credibility finding where medical evidence of improvement of claimant's mental health existed). Regarding plaintiff's depression and anxiety, the ALJ noted his medical reports evince good eye contact, attentiveness, cooperation, and relaxed appearance. Tr. 425, 477, 488, 511, 754. Additionally, plaintiff's thought processes were linear,

logical, organized, and coherent, with intact long-term and short-term memory. Tr. 33, 500–14, 754, 775. Contrary to plaintiff's testimony, the record also reflects regular social contacts. Plaintiff engages with people at his motorcycle club, buys prescription pills from people on the street, and "smokes weed" and rides motorcycles with his friends. Tr. 59, 487, 505, 636, 650, 660, 720, 840. Furthermore, plaintiff stated he suffered from depression "for most of my life." Tr. 122. Having maintained employment in the past despite suffering from depression and anxiety, these conditions do not seem to preclude plaintiff from working.

In regard to sleep apnea, the ALJ noted plaintiff's medical records indicate improvement, despite plaintiff's allegations of "wakefulness during the night and subsequent fatigue during the day." Tr. 29. In 2013, plaintiff had an improved Apnea-Hypopnea Index ("AHI")[3] of 8.9, which is in the "good" range. Tr. 374. In 2014, plaintiff's AHI dropped to 7.6. Tr. 369. Both of these low AHIs were the result of consistent usage of the CPAP equipment. See Tr. 369, 374. When plaintiff's use of the equipment is inconsistent, his AHI increases. See Tr. 336. This indicates that with due diligence, plaintiff can, and has, drastically mitigated the severity of his sleep apnea.

The ALJ also considered plaintiff's carpal tunnel syndrome improvement. In 2014, plaintiff underwent carpal tunnel release on both wrists. Tr. 342, 432. Before these procedures, plaintiff had a general examination that revealed no atrophy in his hands, with a full range of motion; grips were 55/60, key pinches were 14/15, and the three-point pinches were 11/13 on both hands. Id. Plaintiff's 2015 electromyography and nerve conduction velocity findings indicated significant

---

[3] The AHI is used to measure the severity of sleep apnea in a patient. The lower the number, the lower the frequency of breathing irregularities in an hour and thus the less severe the sleep apnea is. A rating less than 5 equates to none or minimal breathing irregularities in an hour. A rating of 30 or more is considered severe. Apnea: Understanding the Results, HARVARD MEDICAL SCHOOL, Feb. 11, 2011, http://healthysleep.med.harvard.edu/sleep-apnea/diagnosing-osa/understanding-results.

improvement: there was no electrodiagnostic evidence of carpal tunnel syndrome, cubital tunnel syndrome, brachial plexopathy, or cervical radiculopathy. Tr. 865. Plaintiff also reported the surgeries reduced his symptoms. Tr. 429, 430.

Thus, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. As such, this Court need not discuss all of the reasons provided by the ALJ because at least one legally sufficient reason exists. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162–63 (9th Cir. 2008). The ALJ's evaluation of plaintiff's testimony is affirmed.

## II.    Ms. Scott's Opinion

Plaintiff contends the ALJ erred by giving "great weight" to the opinion of Ms. Scott, plaintiff's treating mental health counselor. Pl.'s Opening Br. 4 (doc. 16). Evidence from "other medical sources," including a mental health counselor, may be considered because it "provide[s] insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, available at 2006 WL 2329939.

Ms. Scott has been treating plaintiff since August 2015.[4] Tr. 689. In October 2015, Ms. Scott called plaintiff to discuss an insurance form from a private insurance carrier. Tr. 615. When discussing the requirements of the form, she opined plaintiff's mental health symptoms were not disabling. Id. She also told plaintiff that "working part time would help decrease his depression symptoms by getting him out of the house and having a sense of accomplishment." Id.

The ALJ determined that Ms. Scott's opinion was consistent with plaintiff's mental health treatment records and therefore afforded it great weight. Tr. 36. Here, the record supports the ALJ's

---

[4] The progress note from August 2015 indicates a pre-existing relationship between Ms. Scott and plaintiff, but there are no records prior to this date.

conclusion. For example, in June and August 2015, plaintiff's assessment scores indicated moderately severe depression and mild anxiety. Tr. 129–30, 248–49. During this same time frame, however, plaintiff reported that, due to his medications, his functioning had improved: he was exercising, interacting with his wife more, eating healthier, sleeping better, and his anxiety was gone. Tr. 788. Furthermore, as discussed above, the record indicates that plaintiff engaged in a relatively wide slate of daily social activities during the relevant time frame. Tr. 59, 487, 505, 636, 650, 660, 720, 840. Because the record supports Ms. Scott's opinion, the ALJ's decision is upheld as to this issue.

**III.     Dr. Kessler's Opinion**

Plaintiff argues the ALJ failed to include all of the limitations identified by Dr. Kessler in the RFC, despite affording partial weight to his opinion. Pl.'s Opening Br. 12 (doc. 16). Specifically, plaintiff contends that the ALJ's RFC is deficient because it failed to include Dr. Kessler's comments regarding plaintiff's need for indirect (versus direct) contact with coworkers and the general public, and for supervisor assistance in creating realistic goals for the workplace. Id. At the time of the ALJ's decision, there were three types of acceptable medical opinions in Social Security case: those from treating, examining, and nonexamining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Dr. Kessler was a "nonexamining" doctor. "While the opinion of a non-examining doctor generally receives less weight than those of treating and examining physicians, the ALJ must nonetheless 'reference . . . specific evidence in the medical record' in order to reject such an opinion." Cooper v. Berryhill, 2017 WL 4159379, *6 (D. Or. May 16, 2017) (quoting Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998)).

## A.    Indirect Contact

Dr. Kessler opined that plaintiff "is limited to occasional and indirect contact with coworkers and the general public." Tr. 183. The ALJ determined this portion of Dr. Kessler's assessment was consistent with the record. Tr. 35. Notably, plaintiff lost 50 pounds in September 2014 due to depression. Tr. 425. Additionally, plaintiff presented to a psychologist with poor hygiene and grooming, "smell[ing] strongly of body order." Tr. 472. These characteristics were also noted by his other providers. Id. Yet the ALJ failed to include a limitation in plaintiff's RFC for indirect coworker and public contact.

This error was harmful. "Indirect" limits the quality of the interaction, however, "occasional" limits the frequency of the interaction. Because these qualifiers impact social interactions in different ways, the inclusion of one cannot account for the omission of the other. In other words, the fact that "occasional" interaction was presented as a limitation to the VE does not result in an RFC that also reflects Dr. Kessler's limitation for "indirect" contact. The VE opined, and the ALJ determined, that plaintiff could work as a final assembler of optical goods, a wire worker, and a generic table worker. Tr. 40, 82. The Dictionary of Occupational Titles ("DOT") gives each of these jobs a People rating of 8, which is the least demanding level. DOT § 713.687-018 (final assembler), available at 1991 WL 679271; DOT § 726.685-066 (wire work), available at 1991 WL 679631; DOT § 739.687-182 (table worker), available at 1991 WL 680217. A rating of 8 means "not significant." Id. The DOT uses these ratings to measure the complexity of a relationship and further defines a people rating of 8 as "[a]ttending to the work assignment instructions or orders of supervisor." US Dep't of Labor, Dictionary of Occupational Titles 1006 (4th ed. 1991).

Rating the complexity of a work-relationship therefore does not provide information regarding the indirectness of interactions with coworkers or the general public. Furthermore, the definition of a people rating of 8 does not mention interactions beyond those with a supervisor. Thus, this Court cannot assume, as the Commissioner urges, that the "not significant" classification provides any indication of the frequency of interactions. For this reason, the ALJ erred and remand is required.

### B.    Supervisor Assistance

Dr. Kessler also opined that plaintiff "would require supervisor assistance to create realistic goals for the workplace." Tr. 183. The ALJ determined this portion of Dr. Kessler's opinion was vague and gave it "little weight." Tr. 35. The Court finds the ALJ did not err in rejecting this part of Dr. Kessler's opinion. While assistance in setting goals may benefit plaintiff, it is not a concrete work-related limitation of function and therefore need not be reflected in the RFC. Boyer v. Colvin, 2013 WL 3333060, *8 (D. Or. July 1, 2013) (affirming the ALJ's decision under analogous circumstances). As a result, the ALJ did not err in giving this portion of Dr. Kessler's opinion little weight.

### IV.    Lay Witness Testimony

Plaintiff contends the ALJ erred in crediting but not incorporating the lay witness testimony of Sandra P., Mary T., and Barbara P. Pl.'s Opening Br. 32–35 (doc. 16). The ALJ must take into account lay witness testimony as to the severity of a plaintiff's symptoms. Nguyen v. Charter, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ may discount lay witness testimony by providing "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

On July 8, 2014, Sandra P., plaintiff's mother, completed a Third-Party Adult Function Report, in which she asserted that plaintiff's injuries pose limitations largely due to pain and an

inability to concentrate. Tr. 301. In a letter dated May 1, 2016, Sandra P. reiterated the limitations posed by her son's chronic pain and depression. Tr. 329. On May 1, 2016, Mary T., plaintiff's aunt, submitted a letter in support of plaintiff's claim in which she asserted plaintiff "would fall asleep while talking to me" and "has neck and back pain." Tr. 328. Likewise, on May 16, 2016, Barbara P., plaintiff's wife, wrote a letter asserting that plaintiff suffers from pain in his shoulders, neck, and spine. Tr. 330.

The ALJ gave "some weight" to the third-party statements because, although "broadly consistent with the record," they were "based upon casual observation, rather than objective medical examination and testing." Tr. 37. Lay witness testimony is inherently not the product of objective medical examination and testing, and therefore not a germane reason to discredit lay witness testimony.

Even though the ALJ erred in this regard, such error was harmless. See Molina v. Astrue, 674 F.3d 1104, 1122 (9th Cir. 2012) ("[A]n ALJ's [error in assessing] lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims.") (citation and internal quotations omitted). The testimony of Sandra P., Mary T., and Barbara P. is substantively similar to plaintiff's subjective symptom statements. Compare Tr. 272–79, 328, 330 with Tr. 56, 66, 294–301. As discussed above, the ALJ provided clear and convincing reasons, supported by substantial evidence in the record, to reject plaintiff's testimony and these reasons are equally applicable to the lay witness statements. Critically, plaintiff's daily activities and medical records undermine both his and the lay witness testimony. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (rejecting lay testimony on same basis as the claimant's discredited subjective reports); see also Molina, 674 F.3d at 1122. Thus, reversal is not warranted in regard to this issue.

## V. Remand

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1101–02 (9th Cir. 2014). Nevertheless, a remand for an award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. Id. at 1100–01 (citations omitted); see also Dominguez v. Colvin, 808 F.3d 403, 407–08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

The ALJ erred with respect to Dr. Kessler's opinion. The record is nonetheless ambiguous regarding plaintiff's need for a job with indirect contact with coworkers and the public. The record demonstrates plaintiff's depression results in poor grooming and hygiene, and he testified to social anxiety. Tr. 68, 70, 472, 754. The record also indicates however that plaintiff makes good eye contact, is attentive, cooperates, and has a relaxed appearance. Tr. 425, 477, 488, 511, 754. Further, the record reflects plaintiff engages in a fairly wide slate of activities and social contacts outside the home. Tr. 59, 487, 505, 636, 650, 660, 720, 840. In light of these ambiguities, further proceedings are required to resolve this case. Upon remand, the ALJ must review the record and if necessary, reformulate plaintiff's RFC and obtain additional VE testimony.

**CONCLUSION**

For the reasons stated above, the Commissioner's decision is REVERSED and this case is

REMANDED for further proceedings.

DATED this <u>24</u> day of October 2018.


        *Jolie A. Russo*
_____
Jolie A. Russo
United States Magistrate Judge